UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>ANTHONY STORY,<br><br>Defendant. | 5:25-CR-50122-CCT<br><br>**ORDER ADOPTING REPORT AND RECOMMENDATION AND DENYING DEFENDANT'S MOTION TO SUPPRESS** |

Defendant Anthony Story is charged with possession of a controlled substance with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B). Docket 1. He moves to suppress the evidence found during the search of his person and a hotel room in which he was located on May 29, 2025. Dockets 53 and 57. The Court referred Mr. Story's motion to a magistrate judge under 28 U.S.C. § 636(b)(1)(B). After holding an evidentiary hearing, the magistrate judge recommended that the motion to suppress be denied. Docket 67. Mr. Story filed an objection to the Report and Recommendation. Docket 70. The government did not file a response.

**LEGAL STANDARD**

This Court's review of a magistrate judge's report and recommendation is governed by 28 U.S.C. § 636 and Federal Rule of Criminal Procedure 59. Because motions to suppress evidence are considered dispositive matters, the Court reviews de novo objections to the magistrate judge's recommendations.

1

28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59(b); *United States v. Raddatz*, 447 U.S. 667, 673–74 (1980). Under this review, the Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge" and "may also receive further evidence or recommit the matter to the magistrate judge with instructions." 28 U.S.C. § 636(b)(1); Fed. R. Cim. P. 59; *United States v. Craft*, 30 F.3d 1044, 1045 (8th Cir. 1994).

### BACKGROUND

On May 28, 2025, Danielle DuBray booked a hotel room in Rapid City, South Dakota, through Booking.com at approximately 10:30 p.m. for Mr. Story because Mr. Story did not have an identification card. Docket 72 at 49–51. Ms. DuBray explained that Mr. Story had sent her money for the room through a CashApp before she placed the booking. *Id.* at 49. She also stated that she had accidently scheduled the hotel check-in date for May 29 instead of May 28. *Id.* at 54. But she was able to modify the reservation when she went to the hotel to check into the room on May 28. *Id.* at 54–55. After she checked into the hotel, she received the keys for Room 224 and went outside to her vehicle. *Id.* at 53. She gave the keys to her boyfriend to give to Mr. Story. *Id.* at 57–58. Ms. DuBray never stepped past the check-in desk, never entered Room 224, and did not know what Mr. Story intended to do in Room 224. *Id.* at 53–54.

April Fennell, who was the general manager of the hotel, testified that the standard checkout time is 11:00 a.m. *Id.* at 8–9. Guests are notified of the checkout time in the fine print on the online booking and on a printed map that is provided to guests when they check in for their reservations. *Id.* There is

no formal policy on late checkouts, but according to Ms. Fennell, guests can request a late checkout by making such a request personally at the front desk or by a phone call to the front desk. *Id.* at 10–11, 14. She testified that when a guest requests a late checkout, hotel staff will typically note the request on a scratch piece of paper for others to see. *Id.* at 11.

On May 29, 2025, Ms. Fennell was conducting the rounds she traditionally runs shortly after the 11:00 a.m. checkout time. *Id.* at 9, 11. She had not seen a note indicating that the customer for Room 224 had requested a late checkout. *Id.* at 11, 15–16. As a result, she knocked on the door several times, announced herself and her position, and indicated what she was trying to do. *Id.* at 18–19, 24. She testified that she knocked "very loud" to "try to make it so that it echoes throughout the room to make sure that they can hear us." *Id.* at 24. When there was no response, she attempted to open the door with a master key, but the security latch was in place preventing the door from fully opening. *Id.* at 18. Ms. Fennell asked maintenance worker Jebidiah Croyle to open the door, and she returned to the front desk. *Id.* at 11, 26–27.

Mr. Croyle testified that he called Room 224 before attempting to gain entry and got a busy signal, which to him suggested the phone could have been put on the hook backwards. *Id.* at 36–37. After making the call, Mr. Croyle went to Room 224 with a coworker and knocked on the door. *Id.* at 28. He then used a tool, like a "Slim Jim," to release the security latch and enter the room. *Id.* at 27. He testified that entries in this manner are always done in pairs so there is a witness. *Id.* at 28. Mr. Croyle claimed that they used a lot of force

3

"[t]o be loud" and not to startle anyone. *Id.* at 27–29. Once they opened the door, Mr. Croyle saw an unresponsive individual on the bed and an ice-bucket bag over the smoke detector. *Id.* at 29–30. Mr. Croyle was concerned that the unresponsive individual had overdosed. *Id.* at 30. He shared his concern with his manager, Ms. Fennell, and asked her to call an ambulance. *Id.* at 30–31.

Ms. Fennell called 911. *Id.* at 12. During the call, which occurred at approximately 12:00 p.m., Ms. Fennell identified herself as the general manager of the hotel and reported that a hotel guest is passed out due to a possible drug overdose. Exhibit 7 at 0:00:00–0:00:21. She explained that a guest was supposed to check out today and they had not heard anything otherwise. *Id.* at 0:00:49-54. She stated that as a result she had maintenance staff enter the room using an override key. *Id.* at 0:00:54–0:00:57. Ms. Fennell told the operator that the guest was passed out on the bed and not moving, although he was breathing. *Id.* at 0:00:58–0:01:05. She can be heard asking Mr. Croyle questions when responding to dispatch's questions. *Id.* at 0:01:20–0:01:24. She also reported that there was alcohol in the room, and the smoke alarm is missing. *Id.* at 0:01:30–0:01:37. Later in the call, Ms. Fennell indicated that the maintenance worker mentioned the room smelled like fentanyl. *Id.* at 0:02:00–0:02:05.

At the suppression hearing, Ms. Fennell testified that she never entered Room 224 on May 29, 2025, and that the first time she ever saw Mr. Story was when he was wheeled out of the hotel on a stretcher. *Id.* at 13–14. Also at the suppression hearing, Mr. Croyle testified that he did not completely enter Room

4

224; his coworker did so and kicked the bed on which the individual was nonresponsive. *Id.* at 30, 39.

Around the same time Ms. Fennell had called 911, there was a fire marshal at the hotel for a different matter. *Id.* at 31. Mr. Croyle took the fire marshal to Room 224. *Id.* Shortly thereafter, the first responding officers arrived. *Id.* Officer Alexis Kress testified that when she entered Room 224, she observed "[a] male subject lying on the bed unresponsive." *Id.* at 63. She also observed a scale, a large bag of crystalized substance, and a few things near the bed, including a glass pipe, a knife, and a lighter. *Id.* at 65, 69. The individual on the bed, later identified as Mr. Story, "somewhat woke up" after being shaken. *Id.* at 64. "[H]e was very lethargic, not really even responding to [the officers]." *Id.* Officer Kress agreed that Mr. Story's behavior is consistent with someone who has used a controlled substance. *Id.* Paramedics were also in the room and advised Officer Kress that Mr. Story needed further care at the hospital. *Id.* at 65.

Officer Travis Cookson also responded to the 911 call. *Id.* at 72, 74. He arrived after the paramedics and Officer Kress. *Id.* at 74, 78. Once in the room, he saw in plain view "what appeared to be a baggie containing a white, crystal-like substance, a scale and a spoon on the dresser in the room, as well as what appeared to be a glass pipe near the head of the male that was in the room." *Id.* at 74–75. Officer Cookson took photos of the items he observed and Mr. Story's positioning on the bed, and those photos were entered into evidence at the suppression hearing. *Id.* at 75–77.

After Mr. Story was identified as the individual, Officer Cookson became aware that Mr. Story had outstanding warrants. *Id.* at 79. He obtained Mr. Story's consent to search his person and, during the search, uncovered two baggies containing a white, crystal-like substance. *Id.* Officer Cookson informed Mr. Story, before he was taken out of Room 224 by paramedics on a gurney, that he was under arrest. *Id.* at 79–80.

Mr. Story was transported to the hospital, and Officer Kress followed the transport to the hospital. *Id.* at 66, 80. Officer Cookson remained in Room 224. *Id.* at 80. He observed two duffel bags next to the bed, and in one bag, he found multiple bags of a white, crystal-like substance. *Id.* In the second bag, Officer Cookson found "a copious amount of clear plastic baggies" and "documents that had Anthony Story's name on them." *Id.* at 82. Officer Cookson took photographs of this evidence, and the photographs were admitted into evidence at the suppression hearing. *Id.* at 80–82.

During the suppression hearing, an issue arose concerning the scope of cross-examination should Mr. Story testify. *Id.* at 95–97. Counsel for Mr. Story indicated that Mr. Story would testify only "about the events of May 28th, in as far as how did [he] pay for the room, what time did [he] arrive, had [he] been there before, did [he] request a late checkout, had [he] previously requested late checkouts, that kind of stuff." *Id.* at 6, 96–98. Counsel noted that there is no other witness to testify about his expectation of privacy in Room 224. *Id.* at 98. Counsel therefore requested pursuant to Federal Rule of Evidence 104 that the

government not be permitted to question Mr. Story about his drug use or the drugs found in Room 224. *Id.* at 6, 97–98.

The government objected, indicating that "if the defendant were to take the stand to testify as to his subjective expectation of privacy in that hotel room on the 28th, into the 29th, it's - - we're necessarily going to have to get into drug use, as well as what was in that room." *Id.* at 98. According to the government, questions concerning the drugs found in Room 224 bear on Mr. Story's reasonable expectation of privacy and an objective expectation of privacy. *Id.* at 99. It also argued that Mr. Story's drug use is fair game to challenge his ability to recall the events he is testifying to. *Id.*

Magistrate Judge Wollmann determined "that if Mr. Story is going to testify about his expectation of privacy, which would include the check-in process, as well as the checkout process, but it would also include the Government [being] permitted to inquire as to occupants in the room, possessions in the room, which would include what we've heard here today, involves illegal items[,]" then the government would be permitted to ask questions about the items in Room 224, Mr. Story's drug use, and his physical condition. *Id.* at 100–01. However, the magistrate judge precluded cross-examination as it relates to Mr. Story's "other criminal behavior," any associates, and "anything involving a conspiracy or possession with intent to distribute." *Id.* at 100. As a result, Mr. Story decided not to testify. *Id.* at 102.

Following the suppression hearing and considering the parties' arguments and evidence, Magistrate Judge Wollmann issued a Report and

Recommendation, recommending Mr. Story's motion to suppress be denied. Docket 67. The magistrate judge determined that once Mr. Story's rental period ended at 11:00 a.m., he no longer had a reasonable expectation of privacy in Room 224 and therefore lacked standing to contest the entry or search of Room 224. *Id.* at 20. In light of this determination, Magistrate Judge Wollmann did not address the government's alternative argument that exigent circumstances allowed the officers to enter and search the room. *Id.*

## DISCUSSION

Mr. Story does not challenge Magistrate Judge Wollmann's determination that once a person's tenancy in a hotel room expires, that person lacks standing to contest the search of the hotel room. Docket 70 at 2. However, Mr. Story objects to Magistrate Judge Wollmann's ultimate conclusion that he lacked standing to contest the entry into and thus search of Room 224. *Id.* His objection is based on Magistrate Judge Wollmann's denial of defense counsel's oral motion to allow Mr. Story to testify for the limited purpose of establishing that he had requested a late checkout and not be subject to cross-examination about his drug use or the drugs in Room 224. *Id.* Mr. Story claims he was harmed by the ruling because "[w]ithout the Defendant on the stand, counsel was not able to provide evidence or facts, that the Defendant had a continued expectation of privacy in the room." *Id.* at 1, 3.

Under Rule 104, "[b]y testifying on a preliminary question, a defendant in a criminal case does not become subject to cross-examination on other issues in the case." Fed. R. Evid. 104(d). The notes to Rule 104 explain that "[t]he

8

limitation upon cross-examination is designed to encourage participation by the accused in the determination of preliminary matters[,]" allowing the accused to "testify concerning them without exposing himself to cross-examination generally." Fed. R. Evid. 104(d) advisory committee's note to 1972 proposed rule.

However, "[t]here is no federal right to limit the testimony of a witness on a preliminary matter to one single phase of an issue." *United States v. Gomez-Diaz*, 712 F.2d 949, 951 (5th Cir. 1983). Therefore, if an accused takes the stand on a preliminary matter at a suppression hearing, the accused opens the door to full cross-examination on that preliminary matter. *See id.* at 952; *see also United States v. Roberts*, 14 F.3d 502, 517 (10th Cir. 1993).

Here, the preliminary matter on which Mr. Story sought to testify—whether he requested a late checkout—implicates broad cross-examination about the circumstances surrounding Mr. Story's room reservation, alleged request for a late checkout, and expectation of privacy. In particular, it would be proper for the government to cross-examine Mr. Story about his use of drugs in the hotel room to rebut his claim that he requested a late checkout in light of Ms. Fennell's and Mr. Croyle's testimony that Mr. Story did not request a late checkout. Indeed, had Mr. Story testified, his credibility on this question is part and parcel to its resolution. *See* Docket 67 at 3 n.5 (finding Ms. Fennell credible); *Id.* at 5 n.8 (finding Mr. Croyle credible). *See also Roberts*, 14 F.3d at 516 n.24, 517 (noting that questions bearing on the credibility of the accused

9

are proper); *United States v. Taylor*, No. 1:16-CR-145-TWT-JKL-13, 2018 WL 5091915, at *13 (N.D. Ga. Mar. 23, 2018) (same).

It would also be proper for the government to question Mr. Story about the drugs found in Room 224. At the suppression hearing, defense counsel indicated that if Mr. Story took the stand, he would testify about how he paid for the room, when he arrived, whether he had been there before, whether he requested a late checkout, and whether he had previously requested late checkouts. *See* Docket 72 at 97–98. This testimony concerns Mr. Story's claim of a reasonable expectation of privacy in Room 224 and would thus open the door to cross-examination about whether the items, including the drugs, in the room rented by Ms. DuBray belonged to him. *See United States v. Williams*, 754 F.2d 672, 676 (6th Cir. 1985) (concluding that government could ask defendant questions about whether he knew he was carrying drugs based on his direct testimony). Notably, while Magistrate Judge Wollmann stated that the government would be permitted to question Mr. Story, should he testify, about his drug use and the drugs found in Room 224, she specifically barred the government from inquiring about Mr. Story's other criminal behavior, associates he may have, and anything involving a conspiracy or possession with intent to distribute. Docket 72 at 100–01.

### CONCLUSION

Based on the above, Mr. Story's objection to Magistrate Judge Wollmann's determination that the government would be allowed to cross-

examine him, if he testifies, about his drug use and the drugs found in Room 224 is overruled. Thus, it is hereby

ORDERED that the Report and Recommendation, Docket 67, is adopted in full. It is further

ORDERED that Anthony Story's motion to suppress, Docket 53, is denied.

Dated June 4, 2026.

BY THE COURT:

/s/ *Camela C. Theeler*
CAMELA C. THEELER
UNITED STATES DISTRICT JUDGE

11